**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          lsironski@bursor.com
          jwilner@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNE EVANS, individually and on behalf of all others similarly situated,<br><br>                                         Plaintiff,<br><br>     v.<br><br>SLEEP NUMBER CORPORATION,<br><br>                                         Defendant. | Case No. 1:24-CV-01136-KES-SAB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: March 19, 2025<br>Time: 10:00 A.M.<br>Courtroom: 9, 6th Floor<br>Judge: Hon. Stanley A. Boone |

1

**TABLE OF CONTENTS**

2
                                                                                         **PAGE(S)**

3
INTRODUCTION ................................................................................................................1

4
LEGAL STANDARD .........................................................................................................2

5
ARGUMENT ......................................................................................................................3

6
I.      THE FAC SUFFICIENTLY ALLEGES THAT DEFENDANT'S
        ADVERTISED PRICES WERE NOT THE PREVAILING MARKET
7       PRICE...........................................................................................................3

8
II.     PLAINTIFF HAS MET HER PLEADING BURDEN UNDER RULE 9(B)......................5

9
III.    PLAINTIFF SUFFICIENTLY PLEADS HER STATUTORY CLAIMS ..........................9

10
IV.     PLAINITFF ALLEGES COMMON LAW FRAUD .........................................13

11
V.      PLAINTIFF HAS STANDING TO BRING HER CLAIMS ON BEHALF
        OF PURCHASERS OF OTHER PRODUCTS BECAUSE THE
12      PRODUCTS ARE SUBSTANTIALLY SIMILAR AND ARE SIMILARLY
        ADVERTISED ..............................................................................................14

13
CONCLUSION .................................................................................................................16

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2
                                                                                            **PAGE(S)**
3

**CASES**

4
*Anyasulu v. Tempur Sealy Int'l, Inc.*,
5       2024 WL 3834387 (N.D. Cal. Aug. 15, 2024) ................................................................ 2, 18

6   *Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) ..................................................................................................... 3
7
    *Astiana v. Dreyer's Grand Ice Cream, Inc.*,
8       2012 WL 2990766 (N.D. Cal. July 20, 2012) ........................................................... 19

9   *Azimpour v. Sears, Roebuck & Co.*,
        2017 WL 1496255 (S.D. Cal. Apr. 26, 2017) ........................................................... 20
10
    *Backus v. Gen. Mills, Inc.*,
11      122 F. Supp. 3d 909 (N.D. Cal. 2015) ........................................................................ 19

12  *Bell Atl. v. Twombly*,
        550 U.S. 544 (2007) ...................................................................................................... 3
13
    *Branca v. Nordstrom*,
14      2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) ......................................................... 19, 20

15  *Brown v. Food for Life Baking Co., Inc.*,
        658 F. Supp. 3d 732 (N.D. Cal. 2023) ........................................................................ 19
16
    *Brown v. Hain Celestial Grp., Inc.*,
17      913 F. Supp. 2d 881 (N.D. Cal. 2012) ........................................................................ 19

18  *Carvalho v. HP, Inc.*,
        2022 WL 17825688 (N.D. Cal. Dec. 20, 2022) ......................................................... 16
19
    *Cooper v. Pickett*,
20      137 F.3d 616 (9th Cir. 1997) ........................................................................................ 4

21  *Davis v. Shutterstock, Inc.*,
        2024 WL 3618382 (E.D. Cal. July 31, 2024) ............................................................. 15
22
    *Dennis v. Ralph Lauren Corporation*,
23      2017 WL 3732103 (S.D. Cal. Aug. 29, 2017) ........................................................... 20

24  *Eminence Cap., L.L.C. v. Aspeon, Inc.*,
        316 F. 3d 1048 (9th Cir. 2003) .................................................................................... 21
25
    *Faulkner v. ADT Servs., Inc.*,
26      706 F.3d 1017 (9th Cir. 2013) ...................................................................................... 4

27

28

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ............................................................. 7, 18

*Knapp v. Art.com, Inc.*,
   2016 WL 3268995 (N.D. Cal. June 15, 2016) .......................... 5, 7, 14, 19

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ..................................................................... 16

*Maisel v. S.C. Johnson & Son, Inc.*,
   2021 WL 1788397 (N.D. Cal. May 5, 2021) ......................................... 19

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) ............................................................... 16

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ............................................................... 18

*Minor v. Favorite World, LLC*,
   2024 WL 4834951 (C.D. Cal. Sept. 17, 2024) ...................................... 2, 9

*Moody v. Hot Topic, Inc.*,
   2023 WL 9511159 (C.D. Cal. Nov. 15, 2023) ................................... 11, 17

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ............................................................... 16

*Munning v. Gap, Inc.*,
   2016 WL 6393550 (N.D. Cal. Oct. 28, 2016) .................................. 15, 16

*People v. Superior Ct. ("J.C. Penney Corp.")*,
   34 Cal. App. 5th 376 (2019) ..................................................................... 5

*Phillips v. Brooklyn Bedding LLC*,
   2024 WL 2830663 (N.D. Cal. Mar. 28, 2024) ............................... passim

*Rivera v. Peri & Sons Farms, Inc.*,
   735 F.3d 892 (9th Cir. 2013) ..................................................................... 8

*Rubenstein v. Neiman Marcus Group LLC*,
   687 F.App'x 564 (9th Cir. 2017) ............................................................ 10

*Vassigh v. Bai Brands LLC*,
   2015 WL 4238886 (N.D. Cal. July 13, 2015) ................................ 12, 14, 17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................. 4, 8

*Vizcarra v. Michaels Stores, Inc.*,
   710 F. Supp. 3d 718 (N.D. Cal. 2024) ............................................. 10, 15

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008) ................................................................ 14, 16

**STATUTES**

Cal. Bus. & Prof. Code § 17501 ................................................................ 5, 7

**RULES**

Fed. R. Civ. P. 8(a)(2) ................................................................ 2

Fed. R. Civ. P. 9(b) ................................................................ passim

Fed. R. Civ. P. 15(a) ................................................................ 20

1    Plaintiff June Evans ("Plaintiff") respectfully submits this opposition to Defendant Sleep

2  Number Corporation's ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint (ECF No.

3  19) (the "Motion" or "MTD").

4                                    **INTRODUCTION**

5    Unable to defeat the allegations in Plaintiff's First Amended Complaint (ECF No. 15) (the

6  "FAC") on its own terms, Defendant instead resorts to minimizing Plaintiff's allegations and

7  selectively focusing on the dates of two images, while ignoring the other five in the FAC, which

8  plausibly demonstrate that Defendant's deceptive pricing scheme has been going on for years.  But

9  Defendant's intentionally myopic arguments cannot defeat the clear, well-pleaded allegations of

10  the FAC.

11    Plaintiff alleges that she "purchased one of Defendant's Products, a full-size C2 360 Smart

12  Bed mattress, from Defendant's Bakersfield, California store … on February 25, 2023, for a

13  purported sale price of $719.20" and that the Product "displayed an original, strike-through price of

14  $899.00."  FAC ¶¶ 12-13.  Plaintiff alleges that this reference price was false because "Defendant's

15  Products were on sale from the advertised strike-through price for at least 36 months and

16  perpetually for periods exceeding three months within these months, both online and at brick-and-

17  mortar stores.  *Id.* ¶ 6.  She also alleges that "at a minimum, for at least three months immediately

18  preceding Plaintiff's purchase of the Products (*i.e.*, from November 25, 2022 until well after

19  Plaintiff's purchase date of February 25, 2023), the Products were either 1) not sold at the

20  advertised strike-through price; or 2) the advertised strike-through price was not the prevailing

21  market price of the Products[.]"  *Id.*  The FAC substantiates these allegations by including images

22  of Defendant's website throughout the 36-month period when the products were "on sale,"

23  including two images from the three months immediately preceding Plaintiff's own purchase.  FAC

24  Figures 3-9.

25    Despite Defendant's apparent issue with the dates of two of Plaintiff's screenshots,

26  Defendant provides no evidence to refute Plaintiff's allegation that the Products are consistently

27  sold lower than its strikethrough price during the 36-month period at issue .  *See* MTD.  The FAC

28  clearly alleges the deceptive sales scheme was in effect that entire time.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Further, motions to dismiss have been denied in many false sales cases with allegations similar to those in the FAC. *See, e.g.*, *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *4 (N.D. Cal. Mar. 28, 2024); *Minor v. Favorite World, LLC*, 2024 WL 4834951, at *3 (C.D. Cal. Sept. 17, 2024); *Anyasulu v. Tempur Sealy Int'l, Inc.*, 2024 WL 3834387, at *5 (N.D. Cal. Aug. 15, 2024).

Facing an uphill battle, Defendant tries in vain to poke holes in Plaintiff's allegations, arguing Plaintiff did not plead her claims with sufficient particularity, that a reasonable consumer would not be deceived by the false strike-through price on Defendant's advertisements, and that Plaintiff does not have standing to represent consumers who fell prey to the same deceptive pricing scheme and purchased substantially similar products. For the reasons articulated below, all of these arguments fail, and Defendant's Motion should be denied.

### LEGAL STANDARD

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required" to survive a motion to dismiss if the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Labels and conclusions[ ] and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Claims sounding in fraud or mistake are subject to heightened pleading requirements. Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. Proc. 9(b). Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

1    When a party moves to dismiss for failure to state a claim under Rule 12(b)(6), a District

2    Court generally accepts as true all well-pleaded material facts and draws all reasonable inferences

3    in favor of the plaintiff. *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

4                                            **ARGUMENT**

    **I.    THE FAC SUFFICIENTLY ALLEGES THAT DEFENDANT'S ADVERTISED**
5    **PRICES WERE NOT THE PREVAILING MARKET PRICE**

6        Defendant argues throughout its Motion that Plaintiff does not sufficiently allege that the

7    advertised Products were not sold at the prevailing market price in violation of the FAL. *See, e.g.*,

8    MTD at 8. On the contrary, the FAC is replete with allegations and examples of Defendant's

9    Products being perpetually sold on sale (*i.e.*, not at the prevailing market price). FAC ¶¶ 6-7, 13,

10   75. As such, Defendant's argument fails.

11       The FAL provides that "no price shall be advertised as a former price of any advertised

12   thing, unless the alleged former price was the prevailing market price … within three months next

13   immediately preceding the publication of the advertisement or unless the date when the alleged

14   former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal.

15   Bus. & Prof. Code § 17501. At the pleading stage, to plausibly establish that the alleged "former

16   price" is not the prevailing market price, it is sufficient for Plaintiff to allege that Defendant

17   "consistently sells its products at prices significantly ... lower" than its purported, non-existent,

18   former prices. *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at \*5 (N.D. Cal. June 15, 2016); s*ee*

19   *also People v. Superior Ct.* ("*J.C. Penney Corp.*"), 34 Cal. App. 5th 376, 416–17 (2019). This is

20   exactly what the FAC does.

21       Consistent with *Knapp and J.C. Penny Corp.*, the FAC alleges:

22       From September 7, 2021 and likely earlier, until about September 2024,
         Defendant's online store reflected Defendant's sustained deceptive pricing
23       practices for its Products. On information and belief, Defendant's Products were
         on sale from the advertised strike-through price for at least 36 months and
24       perpetually for periods exceeding three months within these months, both online
         and at brick and mortar stores. **At a minimum, for at least three months**
25       **immediately preceding Plaintiff's purchase of the Products (i.e., from**
         **November 25, 2022 until well after Plaintiff's purchase date of February 25,**
26       **2023), the Products were either 1) not sold at the advertised strike-through**
         **price; or 2) the advertised strike-through price was not the prevailing market**
27       **price pursuant to Bus. & Prof. Code § 17501.**

28

1  FAC ¶ 6 (emphasis added).

2      Further, while there is no requirement that Plaintiff demonstrate any specific number of

3  alleged advertising violations in the pleading stage, the FAC provides numerous images that

4  plausibly establish that the alleged "former price" in the advertisements is not the prevailing market

5  price.  That is Plaintiff's only burden under California law.

6      For example, Figures 1 and 2 in the FAC depict how Defendant's Products are sold with the

7  use of sale prices next to strike-through prices.  FAC ¶¶ 3-4.  From there, an additional 7

8  screenshots are provided in Figures 3-9 showing that the Products were never sold at the strike-

9  through price.  Below is a summary of those images and the specific Product and date of purchase

10  by Plaintiff:

**Product – C2 Full-Sized Mattress**

| Date | Strikethrough Price | Advertised Price | Citation in FAC |
|---|---|---|---|
| 9/7/21 | $899 | $699 | Figure 3 |
| 11/25/22 | $899 | $699 | Figure 4 |
| 12/21/22 | $899 | $699 | Figure 5 |
| 2/25/23 | $899 | $719.12 | Plaintiff Purchase date ¶ 12 |
| 8/8/23 | $899 | $809.10 | Figure 6 |
| 10/9/23 | $899 | $809.10 | Figure 7 |
| 2/28/24 | $899 | $809.10 | Figure 8 |
| 5/9/24 | $899 | $809.10 | Figure 9 |

**Figure 1**

Despite showing numerous examples of Defendant's false pricing scheme going back to

2021, including within the three-month period immediately preceding the publication of the

advertisement giving rise to Plaintiff's purchase, Defendant seeks to minimize the relevancy of the

examples by arguing that the FAC contains only "several screenshots, taken months apart of

products advertised on Sleep Number's website—only two of which were taken within a three-

month window of Plaintiff's February 2023 purchase (Black Friday and right before Christmas)."

MTD at 8.  Therefore, Defendant maintains that "[a]t most, the screenshots show that the Sleep

Number c2 360 Smart Bed was on sale on seven days between September 2021, and May 2024, a

1  nearly three-year period.[1]"  *Id.*  However, this argument is unavailing because Plaintiff is not

2  required to prove at this stage that Defendant's Products were never offered at the "original" or

3  "regular" price during the relevant period.[2]  Rather, as explained above, Plaintiff's burden is to

4  simply allege that Defendant consistently sells its products at prices significantly lower than its

5  purported, non-existent, former prices, and that such advertising plausibly establishes that the

6  alleged "former price" in the advertisements is not the prevailing market price.

7      Taking Plaintiff's allegations as true and drawing all inferences in her favor, the Court

8  should find them sufficient to "plausibly suggest" that the strikethrough prices were not the

9  prevailing market prices in the three months preceding her purchase in violation of Cal. Bus. &

10  Prof. Code § 17501.  *See Knapp*, 2016 WL 3268995 at *5.

11  **II.    PLAINTIFF HAS MET HER PLEADING BURDEN UNDER RULE 9(B)**

12      Defendant argues that Plaintiff failed to plead the circumstances of her claims with the

13  requisite particularity required under Rule 9(b).  MTD at 5.  That is wrong.

14      Plaintiff has sufficiently alleged her fraud claims under Rule 9(b).  "Averments of fraud

15  must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."  *See*

16  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  "Malice, intent, knowledge,

17  and other conditions of a person's mind may be alleged generally."  *Rivera v. Peri & Sons Farms,*

18  *Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) (quoting Fed. R. Civ. P. 9(b)).  Plaintiff has so alleged here:

19      **Who:** "Defendant Sleep Number Corporation."  FAC ¶ 39.

20      **What:** "Defendant's conduct was misleading and deceptive because it intentionally

21  represented online and in-store that the Products were on sale when the Products had not been sold

22  at their official strike-through price for at least three months immediately prior to Plaintiff's

---

23  [1] Defendant further argues that the FAC shows that Plaintiff cherry-picked screenshots to establish
24  that it perpetually offered its products at artificially low prices during the purported class period
    because corrective advertising was allegedly made after Defendant received Plaintiff's demand
25  letter.  To the contrary, these allegations were made by Plaintiff to establish an admission that
    Defendant corrected its false advertising scheme only after it was put on notice.

26  [2] Even beyond the pleadings, it is not a strict requirement to prove that the product was never sold
    at the advertised price.  In *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1102–03 (9th Cir. 2013), the
27  Ninth Circuit found the FAL expressly prohibits sellers from advertising products as being
    substantially reduced from their "original" price, when, in reality, the products are routinely sold at
28  their advertised "sale" price.

1  purchase date." *Id*. ¶ 40.  "Defendant continued to intentionally advertise its Products as being on

2  sale for consecutive periods exceeding three months to induce Plaintiff and Class Members into

3  making a purchase they would not have made otherwise." *Id*.

4  **When:** From as early as September 7, 2021 "until May 2024, Defendant engaged in

5  sustained deceptive pricing for its Products, including prior to and at the time Plaintiff and Class

6  Members purchased the Products, despite Defendant's knowledge that the Products had not been

7  sold at their official strike-through price for at least three months immediately prior to Plaintiff's

8  purchase date." *Id*. ¶¶ 6, 41.

9  **Where:** "Defendant's false and deceptive sales practices were made throughout its own

10  marketing materials in its online and brick-and-mortar stores in California." *Id*. ¶ 42.

11  **How:** "For at least 90 consecutive days immediately prior to Plaintiff's purchase date,

12  Defendant intentionally presented the Products with a fictitious strike-through reference price

13  accompanied by a purported discount amount." *Id*. ¶ 43.

14  Courts have found nearly identical allegations sufficient to state CLRA, UCL, and FAL

15  claims at the pleading stage. *See Minor v. Favorite World, LLC,* 2024 WL 4834951, at *3 (C.D.

16  Cal. Sept. 17, 2024) ("Defendant argues that Plaintiffs have failed to meet the particularity

17  requirements for Rule 9(b) for their CLRA claim.  However, Plaintiffs have sufficiently alleged the

18  "who, what, when, where, and how" of Defendant's allegedly misleading pricing scheme for the

19  pleading stage.  Similarly, the Court concludes that Plaintiffs' allegations related to their UCL

20  claim 'are specific enough to give [Defendant] notice of the particular misconduct ... so that [it] can

21  defend against the charge'"); *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *4 (N.D.

22  Cal. Mar. 28, 2024) ("Phillips thus satisfies Rule 9(b), as he has pled 'sufficient detail to put

23  [Brooklyn Bedding] on notice' to respond to the alleged fraud."); *see also Rubenstein v. Neiman*

24  *Marcus Group LLC*, 687 F.App'x 564, 567 (9th Cir. 2017) (plaintiff satisfied Rule 9(b) when she

25  alleged that "she purchased products with Compared To price tags in a Last Call store in

26  Camarillo, California (the 'Where'), on July 21, 2014 (the 'When')[, and] that Neiman Marcus (the

27  'Who'), through its use of those Compared To price tags (the 'What'), misled consumers into

28  believing that the Compared To prices were charged by either Neiman Marcus or other merchants

in the vicinity for comparable products (the 'How')"); *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 729 (N.D. Cal. 2024) (holding that allegations that the defendant's "products are always on sale and customers never have to pay the listed 'regular' price ... suffice at the pleadings stage.").

Defendant's remaining arguments fare no better. For example, Defendant argues that Plaintiff fails to provide sufficient detail regarding the specific information she and other potential class members viewed and relied upon. MTD at 6. That argument ignores Plaintiff's allegations completely. *See* FAC ¶¶ 12-14, 37, 40. Plaintiff alleges that the Product she purchased displayed an original, strike-through price of $899.00, representing that Plaintiff would have a "Total Savings [of] $179.80." *Id.* ¶ 12. Plaintiff alleges that she relied on this strike-through price in making her purchase. *Id.* ¶ 13. Plaintiff also provides details regarding her specific purchase, noting that she purchased a "full-size C2 360 Smart Bed mattress[] from Defendant's Bakersfield, California store" on February 25, 2023, for "a purported sale price of $719.20." *Id.* ¶ 12. Plaintiff also alleges she reviewed information about the Product, including Defendant's representations that the Product was being offered at a discounted sale price, "including but not limited to the Product having a 'new lower price,' representing that consumers enjoyed 'X% off,' and displaying a strike-through reference price." *Id.* Further, Plaintiff alleges that Defendant sells its Products at a purported discount in its online store and uses the same false sales pricing tactics in its brick-and-mortar stores where she purchased the Product. *Id.* ¶ 12, 37. Thus, when Plaintiff visited Defendant's brick-and-mortar store, Plaintiff saw Defendant's Products advertised in a similar manner as its online store. *Id.* ¶ 37. Plaintiff has provided the requisite detail regarding what specific information she relied on when making her purchase.

To that end, none of the authority Defendant relies upon refutes Plaintiff's allegations as the plaintiffs in the cited cases either did not specifically state what misleading promotion or sales they viewed when making their purchases or only made conclusory allegations about the statements they relied on. *See Moody v. Hot Topic, Inc.*, 2023 WL 9511159, at *7 (C.D. Cal. Nov. 15, 2023) (finding allegations insufficient where the plaintiffs did not "provide the particulars of their own experience reviewing or relying upon any representations" and that "without specifying which

misrepresentations they were exposed to, who made those misrepresentations, and when the

misrepresentations were made, Plaintiffs fail to articulate the who, what, when, where, and how of

the misconduct alleged") (cleaned up) (citations omitted); *Vassigh v. Bai Brands LLC*, 2015 WL

4238886, at *4 (N.D. Cal. July 13, 2015) (finding allegations insufficient where the pleading did

"not allege that any particular Plaintiff saw and/or relied on any particular statements, let alone

describe what each Plaintiff believed the statements to mean at the time of purchase").  Here, as

noted *supra*, Plaintiff alleges with specificity what promotion she relied on in making her purchase:

a display with an original, strike-through price of $899.000, representing that Plaintiff would have

a "Total Savings [of] $179.80;" where she saw the misrepresentation; when the misrepresentation

was made; what she believed the misrepresentation to mean; and that Defendant engages in the

same misrepresentation tactics in its online store.  FAC ¶¶ 12, 13, 37.  That is more than enough at

this stage.

Defendant next claims that the "only evidence Plaintiff has provided is **screen shots from

two days** of Sleep Number's advertised prices in the three months before her purchase" and

therefore cannot meet the Fed. R. Civ. P. 9(b) heightened pleading standard.  MTD at 6 (emphasis

in original).  Not so.

Defendant continues to turn a blind eye to Plaintiff's detailed allegations.  As noted above,

Plaintiff provides ample information about her specific purchase, noting that she purchased "a full-

size C2 360 Smart Bed mattress[] from Defendant's Bakersfield, California store" on February 25,

2023, "for a purported sale price of $719.20" and that displayed an "original, strike-through price

of $899.00, representing that Plaintiff would have a 'Total Savings [of] $179.80."  FAC ¶ 12.

Plaintiff also alleges that the false sales tactics Defendant used in its online store are the same as

those it used in its brick-and-mortar stores — thus Defendant's online sales and pricing are

substantially similar to what Plaintiff saw when she made her purchase.  FAC ¶ 37.  Plaintiff

further provides additional details, including numerous screenshots, pertaining to an investigation

into Defendant's pricing scheme through a "digital archive of the internet," that shows that

Defendant did not sell its Products at the advertised strike-through price from at least September

2021 through September 2024, which includes a period of at least three months immediately prior

1    to when Plaintiff made her purchase.  *Id*. ¶¶ 6-7, 32.  This investigation included analyzing the

2    historical pricing of the Products, including Plaintiff's Product for a period before Plaintiff's

3    purchase date, for the three months prior to Plaintiff's purchase date, a period for several months

4    after Plaintiff's purchase date, and sale history for several months prior to the filing of this action.

5    *Id*. Figs. 3-9.

6        Defendant also asserts that Plaintiff's allegations "merely support the unsurprising—and

7    fully legitimate—conclusion that [Defendant] participates" in retail sales holidays like most

8    retailers.  MTD at 7.  But what "well-established retail sales holiday" was Defendant participating

9    in on September 7, 2021, when its website reflected its Products at the *exact* sale prices as it did on

10    November 25, 2022, three months before Plaintiff's purchase?  *See* MTD at 7; FAC Fig. 3.  Or on

11    August 8, 2023; October 9, 2023, February 28, 2024; and May 9, 2024, when the same Products

12    were all still on sale?  FAC Figs. 3-9.  Proximity to holidays does not absolve Defendant from

13    having maintained its purported sales for the months before and after this specified period,

14    including the three months before Plaintiff made her purchase.  At the pleading stage, to plausibly

15    establish that the alleged "former price" is not the prevailing market price, it is sufficient for

16    Plaintiff to allege that Defendant "consistently sells its product at prices significantly … lower"

17    than its purported, non-existent, former prices.  *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *5

18    (N.D. Cal. June 15, 2016).  Plaintiff's thorough detailing of Defendant's perpetual mattress sales

19    demonstrate that Defendant's pricing practices are the farthest thing from "unsurprising and fully

20    legitimate."  *See* MTD at 7.

21    **III.    PLAINTIFF SUFFICIENTLY PLEADS HER STATUTORY CLAIMS**

22        Defendant next argues that each of Plaintiff's statutory claims under the CLRA, FAL, and

23    UCL are "entirely devoid of sufficient factual detail" and thus fail for not being sufficiently

24    pleaded.  MTD at 7-8.  Defendant is once again mistaken.

25        "Claims under the CLRA, FAL and 'fraudulent prong' of the UCL are generally held to the

26    'reasonable consumer' standard."  *Vassigh*, 2015 WL 4238886 at *4  (citing to *Williams v. Gerber*

27    *Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Under this standard, a plaintiff must show that

28

consumers are "likely to be deceived by the challenged statements." *Id.* at *2 (citing to *Williams*, 552 F.3d at 938). That is exactly what Plaintiff does in her pleading.

**CLRA:** The reasonable consumer test governs whether a business practice is deceptive or misleading under the CLRA. *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663 (N.D. Cal. March 28, 2024). Contrary to Defendant's assertions, Plaintiff has sufficiently pleaded her claim under the CLRA because Plaintiff plausibly alleges that Defendant's misleading and deceptive sales and pricing practices in its brick-and-mortar and online stores could deceive a reasonable consumer. *See* MTD at 7; FAC ¶ 40. Plaintiff further alleges that Defendant's deceptive pricing practices misleads reasonable consumers "like Plaintiff into believing they were purchasing a Product of a higher value and quality than it actually is." FAC ¶ 40. Plaintiff alleges that Defendant advertised its Products (including the full-size C2 360 Smart Bed mattress that she purchased) at a purported discounted price and that Defendant displays a strike-through reference price to lead reasonable consumers to believe the Products are being offered at a limited-time discounted price. FAC ¶¶ 12, 37, 40. At the pleading stage, such allegations are enough to plausibly infer that Defendant's price advertising is likely to deceive a reasonable consumer into believing they are purchasing a discounted product. *See Phillips*, 2024 WL 2830663 at *3. This Court should follow well-reasoned decisions in similar price advertising cases that have held comparable specifically pleaded allegations sufficed to survive a motion to dismiss. *See id*; *see also Vizcarra*, 710 F. Supp. 3d at 729 (CLRA claim plausibly pled where the crux of the plaintiff's allegations was that the defendant's advertised sales, discounts, and coupons were "not as good as they might at first appear because its products [were] always on sale and customers never [had] to pay the listed 'regular' price"); *Munning v. Gap, Inc.*, 2016 WL 6393550, at *5 (N.D. Cal. Oct. 28, 2016) ("By alleging that products on Defendants' websites listed crossed-out prices followed by a percentage discount and a new price, Plaintiff has provided enough facts such that it is plausible a reasonable consumer could view the prices as being deceptive."); *Davis v. Shutterstock, Inc.*, 2024 WL 3618382, at *3 (E.D. Cal. July 31, 2024) ("Rule 8 still 'requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]' The allegations in

1    plaintiff's complaint give defendant fair notice of what plaintiff's claims are and the grounds upon

2    which they rest.") (internal citations omitted).

3        **FAL:** Defendant also asserts that Plaintiff's FAL claim is "similarly deficient" because she

4    makes "conclusory" assertions about Defendant's FAL false reference pricing violations.  MTD at

5    7.  This argument, however, is similarly unavailing.  Plaintiff's allegations are anything but

6    conclusory as Plaintiff provides screenshots of the months preceding her purchase where

7    Defendant advertises its Products as being on sale accompanied by a strike-through reference,

8    demonstrating Defendant routinely sold the Products at the advertised "sale" price.  FAC ¶¶ 6, 32,

9    40, Figs. 3-9; *see Munning*, 2016 WL 6393550 at *5.  Plaintiff further provides specific details

10   about what promotions she relied on in making her purchase — *i.e.*, representations of the Product

11   with "an original strike-through price of $899.00, representing that Plaintiff would have a 'Total

12   Savings [of] $179.80'" — and alleges that Defendant engages in the same deceptive false sales

13   practices in its brick-and-mortar stores as it does in its online store.  *Id*. ¶¶ 12-14, 37.  On a motion

14   to dismiss, Plaintiff's allegations are sufficient to show Plaintiff believed the strike-through price to

15   be the original price of the item she purchased.  *Munning,* 2016 WL 6393550 at *5.  Plaintiff's

16   FAL claim is thus sufficiently pled.  *See id*. (finding plaintiff's FAL claim sufficiently pleaded

17   where plaintiff's complaint detailed the who, what, when, where, and how of the alleged conduct,

18   and alleged that products on defendant's website listed crossed-out prices followed by a percentage

19   discount and a new price).

20       **UCL:** Defendant argues that "Plaintiff's claims for violations under the UCL rise and fall

21   with the other statutory claims."  MTD at 8.  This is wrong.  Because Plaintiff has sufficiently and

22   adequately pleaded her CLRA and FAL claims, her UCL claims are as well.  *See Munning,* 2016

23   WL 6393550 at *5 (finding UCL claim valid because plaintiff had sufficiently pled a violation of

24   the FAL); *see also Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020)

25   (explaining that any violation of the FAL necessarily violates the UCL).

26       Moreover, considering plausible allegations, whether a reasonable consumer is likely to be

27   deceived by a defendant's strike-through prices presents an issue of fact that cannot be resolved on

28   the pleadings.  *Phillips,* 2024 WL 2830663 at *4 (citing to and quoting *Carvalho v. HP, Inc.*, 2022

1  WL 17825688, at *6 (N.D. Cal. Dec. 20, 2022)) (finding that whether a strikethrough price "is

2  advertised in a way that is 'likely to deceive' a reasonable consumer in violation" of the CLRA "is

3  an issue the Court cannot resolve" on a motion to dismiss.) (citation omitted); *see also Linear Tech.*

4  *Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007) ("Whether a practice is

5  deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and

6  weighing of evidence from both sides' and which usually cannot be made on demurrer.") (quoting

7  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1472 (2006).

8         Defendant further asserts that "[n]othing in any of Plaintiff's statutory claims plausibly

9  alleges any false or misleading conduct" by Defendant and "nothing giving rise to viable fraud

10 claims."  MTD at 8.  This is also wrong.  Plaintiff pleads numerous details of the investigation

11 undertaken by her counsel concerning Defendant's deceptive pricing practices, including the

12 Product purchased (FAC ¶¶ 12-14), the date the Product was purchased (*id*. ¶ 12), the location of

13 purchase (*id*.), the pricing history of the Products (*id*. ¶ 6, Figs 3-9), and Defendant's false sales

14 pricing practices in store and online (FAC ¶ 37).  Rather than show that Defendant's Products were

15 on sale for seven days between September 21, 2021, and May 2024, the evidence Plaintiff provides

16 demonstrates Defendant's consistent practice of offering its Products at a purported strike-through

17 price for a period of over 36 months, which encompasses the three months prior to Plaintiff's

18 purchase date.  FAC ¶¶ 6, 12-13, Figs 3-9.  Such allegations go beyond the efforts undertaken in

19 the authority relied upon by Defendant.  *See Moody*, 2023 WL 9511159, at *7 (allegations did not

20 satisfy Rule 9(b) pleading standards where plaintiffs failed to specify what misrepresentation they

21 were exposed to and relied on); *Vassigh*, 2015 WL 4238886, at *4 (pleading standards not satisfied

22 where counsel failed to allege that any particular Plaintiff saw and/or relied on any particular

23 statements and what they believed the statements to mean at the time of their purchase).  Defendant

24 cannot ignore Plaintiff's allegations, which establish that Defendant engaged in perpetual sales of

25 its Products at least three months before Plaintiff's purchase.

26        Finally, Defendant argues that there is no connection between Defendant's misleading

27 advertising to Plaintiff's specific purchasing experience.  MTD at 9.  That argument is baseless

28 since the period Plaintiff identifies for Defendant's deceptive sales practices encompasses the three

months prior to Plaintiff's purchase.  FAC ¶¶ 6, 12.  Further, Defendant's reliance on *Moody* is misguided as there the court found that the plaintiffs had not identified what specific advertisements they were exposed to or found material in making their purchases.  *Moody*, 2023 WL 9511159 at *7.

Unlike in *Moody*, Plaintiff states exactly what representations she relied on and found material in making her purchase (FAC ¶¶ 12-14), when she saw the representations (*id*.), alleges how she was harmed by paying for a product that she would not have bought otherwise and believed at the time of her purchase that it was of a higher quality than it actually was (*id*., ¶¶ 12-14, 44, 75, 91), and alleges that Defendant engages in the same advertising practices in store as it does online making it so that what Plaintiff saw in-store is substantially similar to what Defendant displays on its online store (*id*. ¶ 37).  Contrary to what Defendant asserts, Plaintiff sufficiently connects her specific purchasing experience to Defendant's misleading advertising.  FAC ¶¶ 6, 12-14, 37.

Plaintiff has sufficiently pleaded her claims with particularity and has sufficiently established Defendant's misleading conduct for her CLRA, FAL, and UCL claims.  Defendant's Motion should be denied.

## IV.    PLAINITFF ALLEGES COMMON LAW FRAUD

Defendant argues "Plaintiff's claim for common-law fraud fails for similar reasons as the statutory claims brought under the UCL, FAL, and CLRA … As with the statutory claims, Plaintiff's Amended Complaint fails for a lack of particularity."  MTD at 9-10.

As described in detail above, Plaintiff alleges her claims with sufficient particularity.  *See* Argument § II, *supra*.  Satisfaction of Rule 9(b) has been found to be adequate for a finding of common law fraud in false sales cases.  *See, e.g., Phillips*, 2024 WL 2830663 at *7 ("Phillips alleges fraud with the requisite particularity required by Rule 9(b), so dismissal on that basis is denied").  These allegations include allegations of intent and reliance that are sufficient for Plaintiff's common law fraud claim as well.  FAC ¶¶ 6, 41-43.

Further, Defendant is mistaken in arguing that Plaintiff "makes no estimation of damages." MTD at 10.  Plaintiff alleges that she was "induced into purchasing the Products under the false

1    premise that they were of a higher grade, quality, or value than they actually are." FAC ¶ 7.

2    Plaintiff alleges an economic injury as a result of the false reference price. *See Hinojos v. Kohl's*

3    *Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013), as amended on denial of reh'g and reh'g en banc (July

4    8, 2013) (holding plaintiff alleged economic injury where he pleaded he would not have purchased

5    product at false discount); *Anyasulu v. Tempur Sealy Int'l, Inc.*, 2024 WL 3834387, at *5 (N.D.

6    Cal. Aug. 15, 2024) (same).

7    **V.    PLAINTIFF HAS STANDING TO BRING HER CLAIMS ON BEHALF OF**
      **PURCHASERS OF OTHER PRODUCTS BECAUSE THE PRODUCTS ARE**
8      **SUBSTANTIALLY SIMILAR AND ARE SIMILARLY ADVERTISED**

9          Defendant next argues that "[b]ecause Plaintiff brings claims based on products she did not

10    buy, or on advertising she did not see, this Court should dismiss the claims for lack of standing."

11    MTD at 12.  Not so.

12          First, that argument is premature.  As the Ninth Circuit already explained, "[t]he question

13    whether [a plaintiff] may be allowed to present claims on behalf of others who have similar, but not

14    identical, interests depends not on standing, but on an assessment of typicality and adequacy of

15    representation." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015).  Thus, Defendant's

16    standing challenge should be addressed at class certification with a more developed record.

17          Second, even if not premature, the majority of courts to consider this issue have recognized

18    that "under the class action mechanism, a named plaintiff may properly include allegations in his

19    complaint involving products that he did not purchase, so long as those products are substantially

20    similar to the products that allegedly caused his own injuries." *Backus v. Gen. Mills, Inc.*, 122 F.

21    Supp. 3d 909, 924-25 (N.D. Cal. 2015); *see also Brown v. Food for Life Baking Co., Inc.*, 658 F.

22    Supp. 3d 732, 741 (N.D. Cal. 2023) ("As this alleged omission is the same for all of the accused

23    products, the Court finds that they are substantially similar.  Issues pertaining to specific products

24    can be addressed at the class certification stage.  Accordingly, the Court finds that Plaintiffs

25    have standing to include products they did not purchase at this stage.").  The critical inquiry is

26    "whether there is sufficient similarity between the products purchased and not purchased." *Astiana*

27    *v. Dreyer's Grand Ice Cream, Inc.,* 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); *see also*

28    *id.* at *12 ("[T]here is no bright line rule that different product lines cannot be covered by a single

1    class." (citations omitted)).[3]

2         Here, the Products are all mattresses.  *See* FAC ¶ 3; *see also id.* Figs 1-9.  It is clear on its

3    face the Products are substantially similar because they all perform the same function, *i.e.* they are

4    beds.  Crucially, however, this action is not predicated on specific defects in the Products*,* rather it

5    is focused on how the Products are uniformly advertised and sold on perpetual discount compared

6    to an illusory strikethrough "former price."  *See Knapp,* 2016 WL 3268995, at *5.  What is central

7    to the substantial similarity inquiry, then, is the uniformity with which the Products were

8    advertised.

9         *Branca v. Nordstrom*, 2015 WL 10436858 at *5 (S.D. Cal. Oct. 9, 2015), is instructive.  In

10   *Branca*, the district court concluded that the plaintiff had standing to bring claims on behalf of

11   purchasers of other merchandise because the "alleged misrepresentations ... are essentially

12   identical." 2015 WL 10436858 at *5.  The court explained:

13           Plaintiff does not allege that his claims depend on what type of product a consumer
             purchased from Nordstrom Rack; it is immaterial for the purposes of his claims
14           whether one purchased a pair of shoes versus a hat, so long as the item bore a
             "Compare At" tag. His allegations do not relate to the exact prices, percentages or
15           savings listed on the tags, or specific characteristics of the underlying products,
             which would vary by product. Rather, his claims relate to the consistent format of
16           the tags, i.e., the juxtaposition of two prices, one higher than the other, the term
             "Compare At" and a percentage, labeled "% Savings."
17
     *Id.*
18
          Similarly, in *Azimpour v. Sears, Roebuck & Co.*, the court found *Branca* persuasive and
19
     determined "Plaintiff has standing to sue on behalf of purchasers of other Sears items bearing in-
20
     store price tags similar to those relied upon by Plaintiff *because he is challenging the pricing*
21
     *scheme, not the product*."  2017 WL 1496255 at *5 (S.D. Cal. Apr. 26, 2017) (emphasis added).
22
          Such is the case here.  "Defendant sells its Products at a purported discount in its online
23
     store and uses the same false sales pricing tactics in its brick-and-mortar stores."  FAC ¶ 37.  The
24
     false pricing tactic is illustrated in the figures provided in the Amended Complaint.  *See id.* Figs. 1-
25

26   _____
     [3] Courts routinely permit plaintiffs to advance past the pleadings even when the products at issue
27   involve different brands, labels, uses, and ingredients, amongst other differences.  *See, e.g., Maisel*
     *v. S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at *1, *5 (N.D. Cal. May 5, 2021); *Brown v. Hain*
28   *Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 885 (N.D. Cal. 2012).

1    9. Furthermore, Plaintiff alleges that the format of the misleading pricing scheme was consistent

2    between Defendant's brick-and-mortar and online stores. *Id.* ¶ 37. "Thus, when Plaintiff visited

3    Defendant's brick-and-mortar store, Plaintiff saw Defendant's Products advertised in a similar

4    fashion as its online store." *Id.* "Like in Defendant's online store, Plaintiff saw the Product

5    advertised at a discounted price from the strike-through 'full' price." *Id.* Thus, "Plaintiff and Class

6    Members were deceived in-store and online by Defendant's uniform false sales pricing tactics." *Id*.

7        As the FAC makes clear, Defendant's pricing scheme was substantially similar across both

8    its Products and its storefronts. That is more than enough to survive dismissal at this stage. *See*

9    *Dennis v. Ralph Lauren Corporation,* 2017 WL 3732103, at *7 (S.D. Cal. Aug. 29, 2017) ("The

10   Court finds that Plaintiff has demonstrated sufficient similarities in the Defendants' alleged pricing

11   scheme to avoid dismissal of any claims at this stage of the proceedings.").

12                                          **CONCLUSION**

13       For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

14   However, if the Court grants Defendant's Motion in any respect, the Court should give Plaintiff

15   leave to amend. *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so

16   requires"); *Eminence Cap., L.L.C. v. Aspeon, Inc.*, 316 F. 3d 1048, 1051 (9th Cir. 2003) ("[t]his

17   policy is to be applied with extreme liberality.").

18

19   Dated: January 29, 2025          **BURSOR & FISHER, P.A**.

20

21                                     By:   */s/ L. Timothy Fisher*
                                              L. Timothy Fisher

22

23                                     L. Timothy Fisher (State Bar No. 191626)
                                       Luke Sironski-White (State Bar No. 348441)
24                                     Joshua R. Wilner (State Bar No. 353949)
                                       1990 North California Blvd., 9th Floor
25                                     Walnut Creek, CA 94596
                                       Telephone: (925) 300-4455
26                                     Facsimile: (925) 407-2700
                                       E-mail: ltfisher@bursor.com
27                                              lsironski@bursor.com
                                              jwilner@bursor.com
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone:  (818) 370-3912
E-mail:  greg@sinderbrandlaw.com

*Attorneys for Plaintiff*