1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNE EVANS, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiff,<br><br>  v.<br><br>SLEEP NUMBER CORPORATION,<br><br>    Defendant. | Case No. 1:24-cv-01136-KES-SAB<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 19)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Plaintiff June Evans ("Plaintiff") brings this putative class action, alleging California consumer law claims. (ECF No. 15.) On January 15, 2025, Defendant Sleep Number Corporation ("Defendant") moved to dismiss the complaint for failure to state a claim upon which relief can be granted. (ECF No. 19.) The assigned District Judge referred the motion to the undersigned for the preparation of findings and recommendations. (ECF No. 20.) The motion was fully briefed (ECF Nos. 23, 24), and the Court held a hearing on March 19, 2025. (ECF No. 29.) Counsel Joshua Wilner appeared for Plaintiff. Counsel Andrew Hansen appeared for Defendant. Having considered the moving papers, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendant's motion to dismiss.

## I.

## BACKGROUND

Plaintiff is June Evans, an individual who resides in Bakersfield, California. (ECF No. 15, ¶ 11.) Defendant is Sleep Number Corporation, a Minnesota corporation with its principal place of

business in Minneapolis, Minnesota. (Id. at ¶¶ 15, 39.) Defendant manufactures, markets, advertises and distributes mattresses throughout the United States in both its physical and online stores. (Id. at ¶¶ 15, 27.)

On February 25, 2023, Plaintiff purchased a full-sized "C2 360 Smart Bed mattress" for $719.20 from a store owned by Defendant in Bakersfield, California. (Id. at ¶ 12.) Plaintiff states that the mattress she purchased displayed an original, strike-through price of $899.00, meaning that Plaintiff would have a savings of $179.80. (Id. at ¶ 12.) Before making the purchase, Plaintiff reviewed the information about the mattress, including the advertising regarding the sale pricing. (Id. at ¶ 12.) In addition, Plaintiff reviewed and relied on the accompanying labels, disclosures, warranties, and marketing materials, and she understood them as representations and warranties by Defendant that the mattress was ordinarily offered at a higher price of $899.00. (Id. at ¶¶ 12, 13, 43; see id. at ¶ 33.)

As part of the home furnishing and mattress market, Plaintiff alleges that that Defendant offers perpetual "sales" and discounted prices in its physical and online stores. (Id. at ¶ 1, 2, 19.) According to Plaintiff, Defendant uses a method called "reference" pricing whereby it employs inflated, fictious reference prices in order to deceive consumers into believing they are receiving a bargain and inducing them to make a purchase they would not have otherwise made. (Id. at ¶¶ 8, 9, 28, 30-33, 44.) Plaintiff notes that while consumers "actively seek out bargains and discounted items, . . . [p]roducts perceived by consumer to be discounted . . . are not always actual bargains." (Id. at ¶ 3.)

Plaintiff alleges that at the time of her purchase, Defendant's products had not been advertised its physical and online stores at the products' official strike-through price for at least three months prior, "but likely for much longer." (Id. at ¶¶ 5, 13, 40.) In particular, Plaintiff alleges that from at least November 25, 2022, until May 2024, Defendant engaged in "sustained deceptive pricing practices for its [mattresses] . . . ." (Id. at ¶ 41.) Plaintiff continues that "[e]ven if there had been a single day where the [mattress was] offered at the strike-through price, Defendant's continuous sale of the [mattress] at the lower price—often for years—demonstrates that the strike-through price was not the prevailing market price of the [mattress] at the time of Plaintiff's

1    purchase." (Id. at ¶ 13.)

2    More generally, up until around September 2024, whenever consumers visited a store, either

3    in person or online, consumers "were shown purported sales prices on Defendant's [m]attresses."

4    (Id. at ¶ 4.)[1]   However, Plaintiff alleges that Defendant frequently sold its products "below the

5    advertised strike-through price for periods of more than 90 days."   (Id. at ¶¶ 5, 43.)   "While

6    Defendant's online store now reflects some or all of the [p]roducts being sold at the advertised strike-

7    through price, the [p]roducts had not been sold at their advertised strike-through price for at least

8    three months in store and online immediately prior to Plaintiff's purchase of the [p]roduct." (Id. at

9    ¶ 5.) Plaintiff alleges that "[a]t a minimum," for at least three months prior to Plaintiff purchasing a

10   mattress, Defendant's products were "not sold at the advertised strike-through price" or the

11   advertised strike-through price was not the prevailing market price of the Products pursuant to Bus.

12   & Prof. Code § 17501." (Id. at ¶¶ 6, 32.)[2]

13   Plaintiff alleges that had she known "the truth," she would not have purchased the mattress

14   or would have paid less for it. (Id. at ¶¶ 14, 44; see id. at ¶ 34.)   Thus, Plaintiff alleges that she was

15   fooled into believing there was a discount and was thereby induced into making a purchase, and

16   Plaintiff did not receive the benefit of the bargain.   (Id. at ¶ 36.)

17   Plaintiff commenced this putative class action on September 24, 2024, and filed an amended

18   complaint on November 27, 2024.   (ECF Nos. 1, 15.)   Plaintiff brings claims under the following

19   causes of action: 1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750

20   et seq.; 2) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; 3)

21   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; and 4)

22   fraud under California law.   (Id. at ¶¶ 10, 54-104.)   Plaintiff prays for certification of a class action;

23   declaratory relief; injunctive relief; damages, including treble damages; punitive damages; and

---

[1] Even more broadly, ostensibly for the putative class, Plaintiff alleges that "[f]rom September 7, 2021 and likely earlier, until about September 2024, Defendant's online store reflected Defendant's sustained deceptive pricing practices for its [p]roducts." (ECF No. 15, ¶ 6.) Plaintiff again asserts that Defendant's mattresses were on sale from the advertised strikethrough price "for at least 36 months and perpetually for periods exceeding three months within these months, both online and at brick-and-mortar stores." (Id.)

[2] Plaintiff's amended complaint utilizes a digital archive of the internet called "The Wayback Machine." (ECF No. 15, ¶ 7.)

1  reasonable attorney's costs and fees.  (Id. at ¶ 10; id. at ¶ 27.)

2                                                            **II.**

3                                            **LEGAL STANDARDS**

4          Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

5  statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet

6  this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  To overcome

7  a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

8  true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678

9  (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

10 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

11 inference that the defendant is liable for the misconduct alleged."  Id.  "Plausibility requires pleading

12 facts, as opposed to conclusory allegations or the formulaic recitation of the elements of a cause of

13 action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles

14 the pleader to relief."  Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (cleaned up).

15 "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly,

16 550 U.S. at 555.

17         In ruling on a Rule 12(b)(6) motion, the court "accept[s] all factual allegations in the

18 complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."

19 Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation omitted).  But

20 "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"

21 need not be accepted.  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation

22 omitted).  "Dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient

23 factual allegations to support a cognizable legal theory."  Saloojas, Inc. v. Aetna Health of Cal., Inc.,

24 80 F.4th 1011, 1014 (9th Cir. 2023) (cleaned up).

25         In alleging a claim grounded in fraud, "a party must state with particularity the circumstances

26 constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  A court may dismiss a claim for failing to satisfy the

27 heightened pleading requirements of Rule 9(b).  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097,

28 1107 (9th Cir. 2003).  Under this heightened pleading standard, a party must "identify the who, what,

1   when, where, and how of the misconduct charged, as well as what is false or misleading about the

2   purportedly fraudulent statement, and why it is false." <u>Moore v. Mars Petcare US, Inc.</u>, 966 F.3d

3   1007, 1019 (9th Cir. 2020), quoting <u>Davidson v. Kimberly-Clark</u>, 889 F.3d 956, 964 (9th Cir. 2018).

4   The complaint must contain enough detail to put a defendant on notice of the alleged misconduct so

5   they may "defend against the charge and not just deny that they have done anything wrong." <u>Vess</u>,

6   317 F.3d at 1106. "[C]laims based on an omission can succeed without the same level of specificity

7   required by a normal fraud claim." <u>Miller v. Ford Motor Co.</u>, No. 2:20-cv-01796-TLN-CKD, 620

8   F. Supp. 3d 1045, 1068 (E.D. Cal. Aug. 10, 2022) (citation and internal quotation marks omitted).

9                                                    **III.**

10                                   **DISCUSSION AND ANALYSIS**

11          Defendant argues that all of Plaintiff's claims sound in fraud which requires that Plaintiff

12   meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which Defendant

13   argues Plaintiff fails. (ECF No. 19, p. 10-19.) Should the Court determine that Plaintiff has stated

14   one or more claims, Defendant argues that Plaintiff lacks standing to bring claims on behalf of

15   putative class members who did not purchase the same bed she bought and that Plaintiff has not

16   established that the mattresses were substantially similar. (ECF No. 19, pp. 13-19; ECF No. 24, pp.

17   8-10.) Plaintiff opposes, arguing that she has sufficiently pleaded that Defendant's advertised prices

18   were not the prevailing market prices for mattresses, and therefore, she has met her burden under

19   Rule 9(b). (ECF No. 23, pp. 8-19.) Plaintiff then argues that because she seeks to certify a class of

20   substantially similar products, it would premature for the Court to make a ruling that would limit the

21   class at this time. (<u>Id.</u> at pp. 19-21.) While the Court finds that Plaintiff has alleged with particularity

22   fraudulent misconduct insofar as her claims sound in fraud, Plaintiff nonetheless has failed to state

23   a claim for which relief can be granted with all her causes of action.

24          **A.      Standing for Injunctive Relief**

25          The Court begins with the threshold argument of whether Plaintiff has standing to pursue

26   injunctive relief. Defendant argues that Plaintiff lacks standing for injunctive relief. (ECF No. 19-

27   1, pp. 14-15.) Plaintiff did not respond to this argument in her opposition. (<u>See</u> ECF No. 23.) At

28   the hearing, Plaintiff acknowledged that Defendant had raised the issue and stated that Plaintiff

1    believed she could include further allegations to correct any deficiency.  In any event, the Court

2    agrees with Defendant.

3        For standing, a plaintiff seeking injunctive relief "must demonstrate a 'personal stake in the

4    outcome' in order to "assure that concrete adverseness which sharpens the presentation of issues"

5    necessary for the proper resolution of constitutional questions." City of Los Angeles v. Lyons, 461

6    U.S. 95, 101 (1983), quoting Flast v. Cohen, 392 U.S. 83, 94-101 (1968).  Further, a plaintiff must

7    allege that a "real or immediate threat" exists that he will be wronged again. Id. at 111.  The alleged

8    threat cannot be "conjectural" or "hypothetical."  Id. at 101-02.  "'A request for injunctive relief

9    remains live' only when a 'present harm' is left to enjoin and '[p]ast exposure to illegal conduct' is

10   insufficient." Coastal Environmental Rights Foundation v. Naples Restaurant Group, LLC, 115

11   F.4th 1217, 1224 (9th Cir. 2024), quoting Bayer v. Neiman Marcus Grp., Inc., 861 F.3d 853, 864

12   (9th Cir. 2017).

13       Here, Plaintiff has alleged that she is now aware of Defendant's purported strike-through

14   reference pricing, which necessarily means she knows of the alleged danger and cannot be

15   fraudulently induced to purchase a mattress from Defendant in the future.  See id.; Algarin v.

16   Maybelline, LLC, 300 F.R.D. 444, 458 (S.D. Cal. 2014) ("These consumers will not benefit from

17   the injunctive relief as they cannot demonstrate a probability of future injury; if they know the "truth"

18   they cannot be further deceived."); see also Garrison v. Whole Foods Mkt. Grp., Inc., 13-cv-05222-

19   VC, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) ("It may very well be that the legislative

20   intent behind California's consumer protection statutes would be best served by enjoining deceptive

21   labeling.  But the power of federal courts is limited, and that power does not expand to accommodate

22   the policy objectives underlying state law."); Morgan v. Wallaby Yogurt Co., 13-cv-00296-WHO,

23   2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) (same).  And while the Ninth Circuit has held

24   that plaintiffs in these types of cases may be able to sufficiently allege standing for injunctive relief,

25   the Court finds that Plaintiff has not done so here.  See Davidson, 889 F.3d at 969-70; see also

26   Ostrovskaya v. St. John Knits, Inc., No. CV 21-3243-DMG (PVCx), 2022 WL 2102895, at *4 (C.D.

27   Cal. Mar. 31, 2022) (discussing and applying Davidson).

28       Therefore, the Court finds that Plaintiff has not sufficiently alleged standing for injunctive

1    relief.  While the Court admonishes Plaintiff for abandoning this issue in her briefing, the Court

2    cannot say with certainty "that the complaint could not be saved by amendment."  Eminence Capital,

3    LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  Therefore, the Court will recommend

4    that Plaintiff be given leave to amend.

5    **B.    Rule 9(b) Allegations Generally**

6          The Court next addresses the broader argument made by Defendant that Plaintiff has failed

7    to plead her amended complaint with particularity, which is how it was presented to the Court.  (ECF

8    No. 19-1, pp. 5-7.)

9          Preliminarily, the Court notes that "[w]hile fraud is not a necessary element of a claim under

10   the [FAL,] CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in

11   fraudulent conduct.  A plaintiff may allege a unified course of fraudulent conduct and rely entirely

12   on that course of conduct as the basis of that claim.  In that event, the claim is said to be 'grounded

13   in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity

14   requirement of Rule 9(b).  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (internal

15   citations omitted).  As relevant here, a plaintiff need only allege who made a misleading statement,

16   what that misleading statement was, when and where that misleading statement can be found, and

17   how that statement was misleading.  See United States v. United Healthcare Ins. Co., 848 F.3d 1161,

18   1180 (9th Cir. 2016) (concluding that the Rule 9(b) standard does not require absolute particularity

19   as to time frame or specific transactions); Janney v. Mills, 944 F. Supp. 2d 806, 818 (N.D. Cal.

20   2013).  Furthermore, the rule "may be relaxed as to matters within the opposing party's knowledge."

21   Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989).

22         Defendant argues that Plaintiff has alleged only threadbare factual allegations as to the who,

23   what, where, when, and how.  In particular, Defendant argues that Plaintiff has not specified what

24   advertisements Plaintiff observed and how she was exposed to them.  (ECF No. 19-1, p. 7.)

25   Defendant then takes issue that "the only evidence" of Plaintiff's claim that the bed she purchased

26   was advertised not at the prevailing market price is two screenshots incorporated into the amended

27   complaint of from two days where the mattress was on sale.  (Id. at p. 6.)  Defendant seemingly asks

28   the Court to take judicial notice that the screenshots are from days in which retailers, including

1  Defendant, would have had sales.  (Id. at pp. 6-7.)  Notwithstanding these arguments, the Court finds

2  that Plaintiff has complied with Rule 9(b) pleading standards insofar as to her claims sounding in

3  fraud generally.  See Kearns, 567 F.3d at 1125.

4          Plaintiff has alleged that on February 25, 2023, she purchased a full-sized "C2 360 Smart

5  Bed mattress" for $719.20 from a store owned by Defendant in Bakersfield, California.  When she

6  visited the store, Plaintiff reviewed and relied upon the information about the mattress, including the

7  advertising regarding the sale pricing that involved a strike-through price of $899.00.  Plaintiff then

8  alleges that Defendant engaged in a "reference" pricing, meaning that, in order to induce a purchase,

9  Defendant used a strike-through price placed next to the "sale" price was displayed for at least three

10  months immediately prior to the date of Plaintiff's purchase.  To support this, as Defendant notes,

11  Plaintiff has included at least two relevant screenshots from Defendant's online store that are from

12  the relevant timeframe.

13          The Court finds that Plaintiff has sufficiently pleaded the who, what, where, when and how

14  of the alleged misconduct at least insofar as to the timeframe of three months prior to Plaintiff's

15  purchase.  While in its briefing Defendant is focused on the "evidence" Plaintiff has provided, in

16  reviewing a motion to dismiss for failure to state a claim, a Plaintiff need only provide the Court a

17  short and plain statement of the claim showing that Plaintiff is entitled to relief, with the additional

18  pleading of particularity in Rule 9(b).  In other words, Plaintiff does not need to provide in her

19  complaint *evidence* in order to survive a motion to dismiss, even under Rule 9(b).[3]

20          **C.    FAL, UCL, CLRA, and Fraud**

21          The parties then move on to the individual causes of action Plaintiff brings.  Generally

22  speaking, Defendant again relies on an argument that Plaintiff's allegations are insufficient to state

23  a claim under any of theory she has brought.  (ECF No. 19-1, pp. 1, 7-9.)  Plaintiff opposes, offering

---

3 In addition, in opposition to Plaintiff's screenshots, Defendant appears to insinuate that common sense dictates that retail stores hold sales during the day after Thanksgiving and in the days leading up to Christmas.  However, the Court finds that to take such notice would be inappropriate on a motion to dismiss.  Defendant has not formally moved for judicial notice that Defendant itself had a relevant sale on those dates.  Indeed, while the general idea end-year sales might be a concept known to be employed in the American retail market, there might be stores that do not employ sales or limit which products might be on sale.  Finally, the Court reminds Defendant that on a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to Plaintiff.

caselaw in support of her position that she has sufficiently stated a claim as to each cause of action. (ECF No. 23, pp. 9-13.)  While the Court found that Plaintiff has alleged the who, what, where, when, and how of the purported misconduct, the Court nonetheless finds that Plaintiff has failed to state a claim *for which relief can be granted* as to all her causes of action.

### 1.    FAL Section 17501

Plaintiff has not sufficiently pleaded a claim for which relief can be granted under FAL Section 17501.  That section governs the practice of "former price" advertising and provides: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement."  Cal. Bus. & Prof. Code § 17501.

Here, Plaintiff has alleged that Defendant has employed reference pricing whereby a strikethrough price is placed next to a lower actual price.  As other courts have observed, "[a] reasonable consumer does not need language such as, 'Formerly $9.99, Now 40% Off $9.99,' or, '40% Off the Former Price of $9.99,' to reasonably understand '40% off' to mean 40% off the former price of the product."  Knapp v. Art.com, Inc., No. 16-cv-00768-WHO, 2016 WL 3268995, at *4 (N.D. Cal. June 15, 2016).  Moreover, courts have construed strikethrough prices as representing former prices despite "[t]he lack of specific words indicating the regular price."  Munning v. Gap, Inc., No. 16-cv-03804-TEH, 2016 WL 6393550, at *4 (N.D. Cal. Oct. 28, 2016).  The Court finds that Plaintiff's allegations are sufficient to suggest that Defendant's advertising could convey to a reasonable consumer that the non-discounted (strikethrough) list price is a 'former' price under the meaning of Section 17501.

Defendant argues that Plaintiff has alleged in a conclusory matter that the reference pricing was not the "prevailing market price . . . within three months immediately preceding the publication of the advertisement."  (ECF No. 19, p. 13.)  Beginning with the timeframe, the Court has already determined that Plaintiff has sufficiently alleged that Defendant's pricing was consistent the three months prior to her purchase.  Regarding the "prevailing market price," the Court finds that, drawing all reasonable inferences in Plaintiff's favor, Plaintiff's allegations sufficient to plausibly establish

1   that the prevailing market price of products sold at Defendant's stores is the lower, discounted price,

2   while Defendant's advertising presents the higher, non-discounted price as the former price.  Indeed,

3   the Court finds persuasive the reasoning in several district court cases that allowed a Section 17501

4   claim proceed beyond a motion to dismiss without requiring that the plaintiff prove the prevailing

5   market price in a complaint.  <u>Vizcarra</u>, 710 F. Supp. 3d at 726 ("[W]hile a plaintiff must eventually

6   determine the prices charged by other sellers in the market where an item is advertised in order to

7   prove the prevailing market price, they need not identify the actual prices charged by other retailers

8   in order to state a claim."); <u>Knapp</u>, 2016 WL 3268995, at *5 ("Given that [the plaintiff] has plausibly

9   alleged that [the defendant] consistently sells its products at prices significantly . . . lower than its

10  advertised former prices, [the plaintiff] does not need to identify prices charged by other retailers to

11  plausibly establish that [the defendant's] advertised former prices are higher than prevailing market

12  prices."); <u>see also</u> <u>Munning</u>, 2016 WL 6393550, at *5 ("By alleging that products on [the

13  d]efendants' websites listed crossed-out prices followed by a percentage discount and a new price,

14  [the p]laintiff has provided enough facts such that it is plausible a reasonable consumer could view

15  the prices as being deceptive.").

16         However, with this said, critically, Plaintiff has not included any allegations as to what her

17  potential remedy would be, which under the FAL is restricted to equitable relief—*i.e.* injunctive

18  relief or restitution.  <u>Bank of the West v. Superior Court</u>, 2 Cal. 4th 1254, 833 P.2d 545 (Cal. 1992).

19  That is to say, while Plaintiff has alleged that Defendant participated in a deceptive advertising

20  scheme that was intended to induce sales, Plaintiff has not alleged that the mattress she purchased

21  was not in fact worth what she paid for it—namely, $719.20.  When asked about what her remedy

22  would be at the hearing, Plaintiff suggested that she might be entitled to the full cost of what she

23  paid.  <u>But see</u> <u>In re Vioxx Class Cases</u>, 180 Cal. App. 4th 116, 103 Cal. Rptr. 3d 83 (Cal. Ct. App.

24  2009); <u>In re Tobacco Cases II</u>, 46 Cal. 4th 298, 320, 207 P.3d 20 (Cal. 2009).  Plaintiff then suggested

25  that her relief would be the difference between the price she paid and the price of the listed

26  strikethrough price.  However, the problem remains that there are no allegations to support that the

27  mattress Plaintiff purchased was worth less than what she paid for it.  Plaintiff then began to suggest

28  that her loss was in terms of the expectation of buying a mattress worth $899 dollars but in reality

1   paying for and receiving a mattress worth only $719.20.  But see In re Vioxx Class Cases, 180 Cal.

2   App. 4th at 131.  In any event, the amended complaint, as alleged, does not contain allegations that

3   demonstrate that Plaintiff is entitled to restitution or even a clear theory of how to estimate such

4   restitution.  See e.g., Jacobs v. La-Z-Boy Incorporated, No. 2:24-cv-04446-JLS-AS, 2024 WL

5   5194976, at *1 (C.D. Cal. Nov. 14, 2024) (discussing that the allegations included that the plaintiff

6   and all consumers had "overpaid and [were] deprived of the benefit of the bargain . . . .").

7        Therefore, the Court finds that Plaintiff has failed to state a claim for which relief may be

8   granted under the FAL Section 17501.  The Court will recommend granting Defendant's motion as

9   to this aspect of its motion and giving Plaintiff leave to amend.

10              **2.    FAL Section 17500 and UCL**

11       Plaintiff's FAL Section 17500 and UCL claims likewise fail.  As relevant here, the FAL

12  broadly prohibits knowingly or negligently making "untrue or misleading" statements in conjunction

13  with the intentional sale of goods or services.  Cal. Bus. & Prof Code § 17500.  The UCL prohibits

14  "any unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue

15  or misleading advertising" and any act prohibited by the FAL.  Cal. Bus. & Prof. Code § 17200.

16  The California Supreme Court has held that "any violation of the false advertising law necessarily

17  violates the UCL."  Kasky v. Nike, Inc., 27 Cal. 4th 939, 950, 45 P.3d 243 (2002) (cleaned up).

18       Claims under the FAL and UCL "are governed by the 'reasonable consumer' test."  Williams,

19  552 F.3d at 938.  Importantly, the UCL and FAL "prohibit not only advertising which is false, but

20  also advertising which, although true, is either actually misleading or which has a capacity,

21  likelihood or tendency to deceive or confuse the public."  Kasky, 27 Cal. 4th at 951.  Therefore, "to

22  state a claim under either the UCL or the false advertising law, based on false advertising or

23  promotional practices, it is necessary only to show that members of the public are likely to be

24  deceived."  Id.  "California courts . . . have recognized that whether a business practice is deceptive

25  will usually be a question of fact not appropriate for decision on demurrer."  Williams, 552 F.3d at

26  938.  The question is ultimately whether a plaintiff "could plausibly prove that a reasonable

27  consumer would be deceived."  Id. at 940; see also Vizcarra v. Michaels Stores, Inc., 710 F. Supp.

28  3d 718, 728-29 (N.D. Cal. 2024).

Again, Plaintiff has alleged that Defendant participated in reference pricing for at least three months prior to her purchase of the mattress.  The Court finds that it is plausible to that a reasonable consumer, the reference pricing could likely deceive consumers into thinking that they had received a deal.  Defendant attacks Plaintiff's allegation that once she filed a demand letter, some of Defendant's products "were suddenly advertised online at their full retail price."  (ECF No. 19-1, p. 8.)  Plaintiff asserts that this demonstrates that Defendant kept its pricing impermissibly consistent until it was pointed out; Defendant argues that this demonstrates that its pricing was regularly engaged in moving between full price items to sale items.  (Compare ECF No. 19-1, p. 8 with ECF No. 23, p. 5 n.1.)  Once more, on a motion to dismiss, the Court must take all reasonable inferences in Plaintiff's favor.  Therefore, this argument from Defendant is unavailing.

Next, Defendant argues that Plaintiff's allegations do not connect the dots between Defendant's purported conduct and her purchasing experience.  However, as described above, Plaintiff visited a store in Bakersfield, California, viewed the mattress and accompanying advertising and relied upon such advertising when deciding to make a purchase.  Plaintiff has sufficiently alleged this connection.  Regarding the online advertising, Plaintiff alleges that the same reference pricing advertising was occurring both online and physical stores.[4]

Defendant's reliance on Moody v. Hot Topic, Inc. is not persuasive.  No. EDCV 23-0447 JGB (SPx), 2023 WL 9511159 (C.D. Cal. Nov. 15, 2023).  In that case, the court found that the plaintiffs had not alleged which advertisements they viewed when making purchases in an online store before making their purchase.  Id. at *7.  In particular, the plaintiffs used general phrases like "representations on the website" and did not give details as to the content of such representations and how the plaintiffs then relied on those representations.  Id.  By contrast, here Plaintiff has described the strikethrough advertising and has alleged that she viewed it and relied upon it when making her purchase.

However, Plaintiff has again failed to allege a claim for which relief can be granted.  "While the scope of conduct covered by the UCL is broad, its remedies are limited."  Korea Supply Co. v.

---

[4] While not exactly clear, the Court takes Defendant's position to be, at least in part, that the online store and the physical stores might be separate entities that utilize advertising in different ways.  This of course is a question of fact better suited for a later stage of litigation.

1  Lockheed Martin Corp., 29 Cal. 4th 1134, 1144, 63 P.3d 937 (Cal. 2003), citing Cel-Tech
2  Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 170, 973 P.2d 527, 533 (1999).
3  Like an FAL action, "[a] UCL action is equitable in nature; damages cannot be recovered." Id.,
4  citing Bank of the West, 2 Cal. 4th at 1266. "Prevailing plaintiffs are generally limited to injunctive
5  relief and restitution." Id., quoting Cel-Tech, 20 Cal. 4th at 179. Again, the Court finds that Plaintiff
6  has not included allegations on what her restitution would be or even a plausible way to calculate
7  such restitution.

8      The Court will recommend granting Defendant's motion as to these claims and giving
9  Plaintiff leave to amend.

10      **3.    CLRA**

11      Plaintiff's last statutory claim also fails.  The CLRA makes unlawful "unfair methods of
12  competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.  As relevant here, the
13  CLRA prohibits "[r]epresenting that goods . . . have . . . characteristics [or] . . . benefits . . . that they
14  do not have," id. § 1770(a)(5), "[a]dvertising goods . . . with intent not to sell them as advertised,"
15  id. § 1770(a)(9), and "[m]aking false or misleading statements of fact concerning reasons for,
16  existence of, or amounts of, price reductions," id. § 1770(a)(13).

17      As with the FAL and UCL, the reasonable consumer test governs whether a business practice
18  is deceptive or misleading under the CLRA.  Moore, 966 F.3d at 1017; see also Shaeffer v. Califia
19  Farms, LLC, 44 Cal. App. 5th 1125, 1136 (2020) ("The CLRA also views representations through
20  the eyes of 'the reasonable consumer.'"), quoting Consumer Advocs. v. Echostar Satellite Corp.,
21  113 Cal. App. 4th 1351, 1360 (2003).  "Plaintiffs 'must show that members of the public are likely
22  to be deceived.'" Moore, 966 F.3d at 1017, quoting Williams, 552 F.3d at 938.  "[W]hether a
23  business practice is deceptive will usually be a question of fact not appropriate for decision on
24  demurrer." Id.

25      Here, at the pleading stage, Plaintiff has plausibly alleged that Defendant's price advertising
26  could likely deceive a reasonable consumer.  The Court finds that Defendant's reference pricing,
27  described in detail above, could plausibly lead a reasonable consumer to believe that they will be
28  receiving a discount on their mattress when in reality there is no actual discount. Phillips v. Brooklyn

Bedding, LLC, No. No. 23-cv-03781-RFL, 2024 WL 2830663, at *3 (N.D. Cal. Mar. 28, 2024). As with Plaintiff's FAL claim, courts in similar price advertising cases have found that comparable CLRA allegations survive a motion to dismiss. See, e.g., Vizcarra, 2024 WL 64747, at *7 (CLRA claim plausibly pled where "the essence of [plaintiff's] allegations . . . is that [the defendant's] advertised sales, discounts, and coupons are not as good as they might at first appear because its products are always on sale and customers never have to pay the listed 'regular' price").

Defendant's attempt to use Plaintiff's caselaw against her fails to persuade. In Munning, the court dismissed the plaintiff's CLRA claims because the plaintiff failed to provide the defendant statutory notice, an issue Defendant does not raise here. 2016 WL 6393550, at *4.

In contrast to the FAL and UCL, the CLRA provides that broad remedies, including actual damages, injunctive relief, restitution of property, and punitive dagames. Cal. Civ. Code § 1780(a). But see Sonner v. Premier Nutrition Corporation, 971 F.3d 834, 837 (9th Cir. 2020). However, as discussed above, it is unclear to the Court that Plaintiff has alleged that she is entitled to relief under the CLRA based on her allegations insofar she has not alleged she was actually harmed.

Therefore, the Court finds that Plaintiff has not sufficiently pleaded a CLRA claim for which relief can be granted. The Court will recommend granting Defendant's motion as to this claim with leave to amend.

### 4. Fraud Under California Law

Plaintiff has also not stated a claim of fraud. Under California law, the elements of fraud are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. Lazar v. Superior Court, 12 Cal. 4th 631, 638, 909 P.2d 981 (1996). "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." Conrad v. Bank of America, 45 Cal. App .4th 133, 156, 53 Cal. Rptr. 2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." Conrad, 45 Cal. App. 4th at 157. "The absence of any one of these required elements will preclude

1    recovery." Wilhelm v. Pray, Price, Williams & Russell, 186 Cal. App. 3d 1324, 1332, 231 Cal. Rptr.

2    355 (1986).

3        The Court finds that Plaintiff has pleaded a misrepresentation, reference pricing, by

4    Defendant and that Defendant knew or should have known that it was false and was using it to induce

5    sales. The Court also finds that Plaintiff has pleaded that she justifiably and actually relied on the

6    misrepresentation when making her purchase.

7        Regarding damages, as relevant here, "[m]isrepresentation, even maliciously committed,

8    does not support a cause of action unless the plaintiff suffered consequential damages. Gonsalves

9    v. Hodgson, 38 Cal. 2d 91, 101, 237 P.2d 656 (Cal. 1951); Hull v. Sheehan, 108 Cal. App. 2d 804,

10   805, 239 P.2d 704 (Cal. Ct. App. 1952). The damages suffered must be referable to, and caused by,

11   the fraud. Gagne v. Bertran, 43 Cal. 2d 481, 490-491, 275 P.2d 15 (Cal. 1954); Gonsalves, 38 Cal.

12   2d at 101. In other words, "[d]eception without resulting loss is not actionable fraud." Fladeboe v.

13   American Isuzu Motors Inc., 150 Cal. App. 4th 42, 65, 58 Cal. Rptr. 3d 225 (Cal. Ct. App. 2007),

14   quoting Service by Medallion, Inc. v. Clorox Co., 44 Cal. App. 4th 1807, 1818, 52 Cal. Rptr.2d 650

15   (Cal Ct. App. 1996). Under California law, a defrauded party is ordinarily limited to recovering out-

16   of-pocket damages. Id. at 66, citing Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1240,

17   900 P.2d 601 (Cal. 1995). The out-of-pocket measure of damages "'is directed to restoring the

18   plaintiff to the financial position enjoyed by him prior to the fraudulent transaction, and thus awards

19   the difference in actual value at the time of the transaction between what the plaintiff gave and what

20   he received.'" Id., quoting Alliance Mortgage Co., 10 Cal. 4th at 1240. "[A]ctual value" for

21   purposes of Civil Code section 3343 means "market value." Nece v. Bennett, 212 Cal. App. 2d 494,

22   497, 28 Cal. Rptr. 117 (Cal. Ct. App. 1963).

23        Defendant argues that Plaintiff has not alleged actual damages. (ECF No. 19-1, p. 10-11.)

24   Plaintiff responds that she "induced into purchasing the [p]roducts under the false premise that they

25   were of a higher grade, quality, or value than they actually are." (ECF No. 23, pp. 13-14.) Thus,

26   Plaintiff argues that she has alleged an "economic injury" as a result of the false reference pricing.

27   (Id. at p. 14.) To this, Defendant contends that Plaintiff is relying upon pleading and standing

28   requirements for violations of consumer protection statues, not fraud. (ECF No. 24, p. 8.) The Court

1  agrees with Defendant.

2      While there are ample allegations regarding that the strike-through price was not the

3  prevailing market price and that Plaintiff believed she was purchasing a product of a higher value

4  and quality than it allegedly was (*i.e.*, an economic harm for standing purposes), Plaintiff has pleaded

5  nothing in way that the price she actually paid for the mattress deviated from the market value (*i.e.*,

6  damages).  As with her other claims, Plaintiff has provided no allegations that the mattress she

7  bought was not in fact worth what she actually paid for it notwithstanding the purported reference

8  pricing.  Even giving every inference in Plaintiff's favor, the Court finds that Plaintiff has alleged

9  only that "Defendant's fraudulent actions caused damage to Plaintiff . . . ."  (ECF No. 15, ¶ 104);

10  see Zumbrun v. University of Southern California, 25 Cal. App. 3d 1,12, 101 Cal. Rptr. 499 (Cal Ct.

11  App. 1972) ("Allegations of damages without allegations of fact to support them are but conclusions

12  of law, which are not admitted by demurrer.").  Thus, at present, the complaint does not state a claim

13  of fraud.

14      With this understanding, the Court next seriously questions whether Plaintiff has also alleged

15  that Defendant intended to defraud consumers.  See Lovejoy v. AT&T Corp., 119 Cal. App. 4th 151,

16  161, 14 Cal. Rptr. 3d 117 (Cal. Ct. App. 2004).  That is to say, while Defendant may have been

17  allegedly attempting to induce sales of its products, it is not clear from the allegations that Defendant

18  had intent to commit fraud by providing consumers with a mattress that was not in fact valued at the

19  prevailing market price.  Therefore, the Court also finds that Plaintiff has failed to plead that

20  Defendant intended to defraud Plaintiff.

21      Plaintiff's precedent is inapposite.  In Hinojos v. Kohl's Corp., the Ninth Circuit addressed

22  the issue of statutory standing under California's consumer protection statutes UCL, FAL, and

23  CLRA.  718 F.3d 1098, 1102 (9th Cir. 2013).  In Anyasulu v. Tempur Sealy International, Inc., the

24  plaintiff brought only claims of violations of the UCL and CLRA.  745 F.Supp.3d 913, 916 (N.D.

25  Cal. 2024).  Neither of these cases address damages under California fraud and are therefore

26  unhelpful to the Court.

27      Accordingly, the Court will recommend granting Defendant's motion to dismiss as to

28  Plaintiff's claim of fraud with leave to amend.

1  The Court observes that at various times during the hearing, Plaintiff asked for leave to
2  amend indicating that she could provide more allegations to cure any pleading deficiencies. Thus,
3  the Court notes here that it will recommend granting leave to amend on all Plaintiff claims with the
4  understanding that Plaintiff will do so only to the extent she believes in good faith she can plead
5  additional factual material that could satisfy the legal standards and deficiencies identified above.
6  See Fed. R. Civ. P. 15(a)(2); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

7  **D.    Putative Class Issues**

8  Defendant's final argument again centers around standing. Defendant first argues that
9  Plaintiff lacks standing to bring claims, on behalf of the putative class, for products she did not
10  purchase herself. (ECF No. 19-1, p. 12-14.) Plaintiff responds that this argument is premature or in
11  the alternative that the products in question are sufficiently similar for class representation. (ECF
12  No. 23, pp. 14-16.) Because the Court has found that Plaintiff's amended complaint has failed to
13  state a claim, the Court finds this argument is premature.

14  Finally, as discussed in the hearing, the Court has reservations about how Plaintiff has
15  articulated her allegations regarding the putative class. (See ECF No. 19, p. 13.) For example,
16  Plaintiff has left undefined the term "Products" in the amended complaint, which in her opposition
17  she states means 'beds.' However, as discussed in the hearing, Defendant sells a number of
18  "products" that would objectively not be considered beds. Even inferring that Plaintiff means
19  mattresses generally would appear to be vague. (See ECF No. 15, ¶ 3.) Moreover, related to the
20  pleading inadequacies outlined above, the Court also notes there might be, at least at present, issues
21  of typicality.[5]

22  **V.**

23  **CONCLUSION AND RECOMMENDATION**

24  Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion to
25  dismiss (ECF No. 19) be GRANTED WITHOUT PREJUDICE.

26

27  [5] In making these observations on the bench and in this order, the Court is not making any determinations on the issue of class certification, which again the Court believes is premature at this point. See Melendres v. Arpaio, 784 F.3d 1254, 1261 (9th Cir. 2015). Rather, it is the Court's intention to only discuss an issue raised by Defendant but
28  in another context. (See ECF No. 19, p. 13.)

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 11, 2025**

STANLEY A. BOONE
United States Magistrate Judge